# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JULIE VALADEZ,**
      **Plaintiff,**

    v.                                                    Case No. 21-C-0795

**JUDGE MICHAEL J. APRAHAMIAN,**
**MOLLY JASMER, and**
**WAUKESHA COUNTY CIRCUIT COURT,**
      **Defendants.**

---

## DECISION AND ORDER

Plaintiff Julie Valadez, proceeding pro se, has filed a complaint in this court against two participants in an ongoing child-custody proceeding in the Circuit Court for Waukesha County, Wisconsin: the trial judge presiding over the case (Judge Michael J. Aprahamian) and the child's guardian ad litem (Attorney Molly Jasmer). Valadez also names the Waukesha County Circuit Court as a defendant. When she filed her complaint, Valadez requested leave to proceed without prepayment of the filing fee under 28 U.S.C. § 1915. However, she later paid the full filing fee, and so I will deny her request as moot. The three defendants have each filed a motion to dismiss the complaint, and I address their motions in this order.

### I. BACKGROUND

In March 2018, Valadez initiated a divorce proceeding in the Circuit Court for Waukesha County.[1] Because the parties had minor children, the divorce raised child-

---

[1] I take judicial notice of the docket for the Waukesha case. *See Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019). It is available online at https://wcca.wicourts.gov/

custody issues, and the court appointed a guardian ad litem to represent the interests of Valadez's son. On January 2, 2019, the divorce and child-custody proceeding was transferred to Judge Michael J. Aprahamian of the Waukesha court. On April 9, 2020, following a court trial, Judge Aprahamian issued an order granting the divorce and determining child placement. After judgment was entered, the person who served as guardian ad litem for the child during the trial was discharged. Molly Jasmer became the guardian ad litem in October 2020.

On March 18, 2021, the court held a hearing at which Valadez was required to show cause why she should not be held in contempt. The docket for the case does not explain the nature of the contempt charges against Valadez, but it states that Valadez was held in contempt. During the same hearing, Jasmer requested that the court modify placement of Valadez's son. Judge Aprahamian granted the request and suspended placement of the child with Valadez until further order of the court.

Valadez's federal complaint alleges that, after the March 18 hearing, her son was receiving treatment in a mental hospital and asked to see his mother. On April 7, 2021, Valadez's son "was hospitalized for suicidal ideation asking for his mother and not to be with his father." Compl. at 5. The complaint alleges that, on April 8, Jasmer "told the hospital not to allow [Valadez's son] any contact with his mother." *Id.* Jasmer then "wrote up a document 'prohibiting contact'" and "presented it to the hospital to enforce without a judge's signature." *Id.*

---

and can be accessed by entering the state-court case number (2018-FA-296) into the appropriate search field and selecting Waukesha County.

The next day, Jasmer filed a letter with the Waukesha court asking the court to sign a proposed order prohibiting Valadez from having contact with her son. Judge Aprahamian signed this order on April 13, 2021. Valadez attached the order to her complaint. *See* ECF No. 1-1. The order states that, based on the letter and supporting affidavit filed by Jasmer on April 9 (which are not attached to the complaint or otherwise in the federal record), Valadez shall not have any contact with her son except through approved family therapy sessions. The order further states that violations may be punished by contempt sanctions.

In her federal complaint, Valadez alleges that the no-contact order is unlawful and violates her "federally protected parental rights to ones [sic] own child." Compl. ¶ 5. She seeks "injunctive relief for [her]self and [her] son, *id.* at 5, and an "immediate stay of the order," *id.* at 6. Valadez also seeks relief against Jasmer for presenting the unsigned copy of the order to the hospital on April 8, 2021. *Id.* Finally, she requests an award of damages.

Each defendant has filed a motion to dismiss the complaint, raising a number of issues relating to this court's jurisdiction and the merits of the plaintiff's claims.

## II. DISCUSSION

Construing the plaintiff's pro se complaint liberally, I understand her to be alleging two claims under 42 U.S.C. § 1983 for violation of her "constitutionally protected right to freedom from undue state interference with family relations." *Sebesta v. Davis*, 878 F.3d 226, 232 (7th Cir. 2017). I understand the first claim to involve Jasmer's alleged conduct on April 8, 2021, when she allegedly told the hospital not to allow Valadez to have contact with her son and presented the hospital with a copy of an unsigned no-contact order. I

understand the second claim to be seeking an injunction against the no-contact order signed by Judge Aprahamian and damages for the harm that the order caused.[2]

I begin by discussing the second claim, which challenges the no-contact order itself. The defendants contend that I do not have jurisdiction to entertain a challenge to the order, because both the *Rooker-Feldman* doctrine and the domestic-relations exception to federal jurisdiction apply to this claim. The *Rooker-Feldman* doctrine precludes lower federal courts from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, Valadez is complaining of injuries caused by the Waukesha court's no-contact order, which was rendered before the district court proceeding commenced. But the child-custody proceedings in the Waukesha court were ongoing when the plaintiff filed this suit, and the Seventh Circuit has held that *Rooker-Feldman* applies only when the party files suit after the state-court case has ended. *See Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014). Still, Valadez appealed the no-contact order, and both the Wisconsin Court of Appeals and the Wisconsin Supreme Court rendered decisions in her appeal before Valadez filed this suit, *see* ECF No. 23-1, so maybe proceedings relating to the no-contact order have ended and *Rooker-Feldman* applies. But there is another problem:

---

[2] Valadez's complaint alleges that the no-contact order violates her own rights and her son's rights. *See* Compl. at 5. However, Valadez has not named her son as a plaintiff and does not purport to represent him. In any event, because Valadez is pro se, she cannot assert claims on behalf of her son. *See, e.g., Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010).

4

the Wisconsin Court of Appeals did not address the merits of the no-contact order but instead declined to exercise supervisory jurisdiction over the Waukesha court. *Id.* This makes it appear as though the no-contact order is an interlocutory order rather than a final judgment, and the Seventh Circuit has suggested that *Rooker-Feldman* does not apply to interlocutory orders. *See Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). *But see Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) (describing the issue as undecided in the Seventh Circuit).

Because of the uncertainty over whether *Rooker-Feldman* bars review of the no-contact order, I turn to the defendants' second jurisdictional argument, which is based on the domestic-relations exception to federal jurisdiction. This exception precludes federal courts from exercising jurisdiction over cases that pertain to "divorce and alimony decrees and child custody orders." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Here, the no-contact order under attack is not a child-custody order, as it does not deal directly with custody of the plaintiff's son. Instead, it is akin to a restraining order that a state court might enter to prevent one person from harassing another. Still, the state court unquestionably entered the order as part of its ongoing supervision of the child-custody dispute between the plaintiff and her ex-husband, which had grown extremely contentious, as evidenced by the multiple contempt proceedings that appear on the state-court record. The state court evidently believed that this order was needed to protect the best interests of the minor child.

The Seventh Circuit has recognized that the domestic-relations exception has a "penumbra" that applies to "ancillary proceedings . . . that state law would require be

5

litigated as a tail to the original domestic relations proceeding." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). The court has explained:

> When a case must begin in state court, as a divorce or custody case must, retention of any ancillary litigation in the same court is supported by considerations of judicial economy, and also by considerations of relative expertness since the issues in an ancillary proceeding may be the same as those in cases that are within the core of the domestic relations exception and hence within the exclusive jurisdiction of the state courts.

*Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir. 1982). Thus, if "the exercise of federal jurisdiction will create a potential for inconsistent decrees" or "will result in piecemeal, duplicative, or inexpert handling of what is substantially a single controversy," then the penumbra of the domestic-relations exception applies. *Id.* at 493. Here, I conclude that the no-contact order falls within the penumbra. As I have stated, the order was entered as part of the state court's ongoing supervision of a contentious child-custody case. Bringing the dispute over that order into federal court would disrupt the state-court proceeding and defeat judicial economy. Further, a federal court is not well suited to the task of supervising a "volatile family situation," as the Valadez' child-custody dispute evidently has become. *Id.* Thus, I conclude that Valadez's claims against Judge Aprahamian, the Waukesha County Circuit Court, and Molly Jasmer for an injunction against the no-contact order and for damages for injuries caused by the order must be dismissed under the domestic-relations exception to federal jurisdiction.

In case I am mistaken about whether the domestic-relations exception applies, I also note that the Seventh Circuit has held that, even when the exception is not a perfect fit for a case, considerations of federalism and comity may independently support a federal court's decision to abstain from exercising jurisdiction. *See J.B. v. Woodward*, 997 F.3d 714, 720–25 (7th Cir. 2021). In *Woodward*, a plaintiff sought to bring claims relating

6

to a state-court order suspending the plaintiff's parenting time. The court noted that several doctrines rooted in "equity, comity, and federalism"—including *Rooker-Feldman*, the domestic-relations exception, and *Younger* abstention—potentially applied to the case. *Id.* at 721–23. However, the court found that none was an "exact fit." *Id.* at 723. Still, the court held that the district court properly abstained from exercising jurisdiction over the case because, "under the foundational principles of our federal system," a federal court should not exercise jurisdiction in a way that interferes with an ongoing domestic-relations proceeding in state court. *Id.* at 723, 725.

Like in *Woodward*, in the present case many doctrines rooted in federalism potentially apply. Aside from *Rooker-Feldman* and the domestic-relations exception, which I have already discussed, the defendants raise *Younger* abstention. And I think a case could be made that the plaintiff's request to enjoin the no-contact order would be barred by the Anti-Injunction Act, 28 U.S.C. § 2283. *See O'Keefe v. Chisholm*, 769 F.3d 936, 937 (7th Cir. 2014) (recognizing that although § 1983 authorizes anti-suit injunctions, principles of "equity, comity, and federalism" determine whether such injunctions are appropriate). Essentially, the plaintiff's challenge to the no-contact order is a request to have a federal court interfere in an ongoing child-custody dispute that, under the federal-state system, is within the exclusive domain of state courts. Thus, even if no abstention doctrine perfectly fits the situation, principles of comity and federalism require this court to abstain from exercising jurisdiction over the plaintiff's challenge to the no-contact order and her request for damages caused by entry of the order.

Having declined to exercise jurisdiction over the plaintiff's challenge to the no-contact order, I turn to her remaining claim against Jasmer, which involves Jasmer's

7

actions on April 8, 2021. I understand this claim to be seeking damages under § 1983 for the emotional harm the plaintiff experienced from not being allowed to contact her son while he was in the hospital before the signed no-contact order was entered. (As stated above, any claim for damages that were incurred after the signed order was entered is dismissed for lack of jurisdiction.) Jasmer contends that this claim should be dismissed for two reasons: (1) a guardian ad litem has absolute immunity from a suit for damages, and (2) a guardian ad litem is not a "state actor," i.e., a person that acts under color of state law for purposes of § 1983.[3]

The Seventh Circuit has held that "[g]uardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). This is so because "[e]xperts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations without the worry of intimidation and harassment from dissatisfied parents." *Id.* (internal quotation marks omitted). However, a guardian ad litem's absolute immunity applies only "to conduct that occurred within the course of [his or her] court-appointed duties." *Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 361 (7th Cir. 2010). It does not apply, for example, when the plaintiff alleges that the

---

[3] Jasmer also contends that this claim should be dismissed under *Rooker-Feldman*, the domestic-relations exception, and *Younger* abstention. However, because this claim does not challenge an order entered in the custody case, but instead seeks damages for Jasmer's conduct before the order was entered, success on her claim would not interfere with the state court's handling of the custody matter. Thus, I will not abstain from exercising jurisdiction over the § 1983 claim against Jasmer insofar as it relates to her actions before the no-contact order was entered.

8

guardian engaged in self-dealing. *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006). Further, the Seventh Circuit has suggested (though not squarely held) that a guardian ad litem is not entitled to absolute immunity for actions taken in her role as an advocate, such as "prepar[ing] court orders." *Golden*, 611 F.3d at 361. The court stated that although these acts are part of a child representative's statutory duties, "they involve a form of advocacy that more closely resembles the work carried out by a public defender than that of a guardian ad litem." *Id.* The court observed that because public defenders are not absolutely immune from suit, guardians ad litem might not be entitled to such immunity for their actions taken as an advocate for the child. *Id.*

In the present case, the plaintiff does not allege that Jasmer engaged in self-dealing. However, the actions she challenges involved Jasmer's role as an advocate for the child. Jasmer determined that the plaintiff's contacts with her son were not in her son's best interests and took steps to have the hospital prevent the plaintiff from contacting him. In taking these actions, Jasmer was not acting as an advisor to the court, and so absolute immunity might not apply.

But if Jasmer was not acting as an arm of the court when she took steps to block contact between Valadez and her son, then Valadez's claim against Jasmer fails for a different reason: Valadez was not acting under color of state law. The Supreme Court has held that public defenders do not act under color of state law for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312 (1981). Based on an analogy to *Polk County*, both the Ninth and Tenth Circuits have held that a guardian ad litem that functions as an attorney or advocate for a child likewise does not act under color of law. *Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003); *Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986). Although

9

the Seventh Circuit has yet to address this question, *see Golden*, 611 F.3d at 362, I have not found a federal appellate case reaching a contrary conclusion. Moreover, under Wisconsin law, a guardian ad litem generally does not act on behalf of the state when he or she takes action on behalf of the child. Wisconsin law states that "[t]he guardian ad litem shall function independently, in the same manner as an attorney for a party to the action." Wis. Stat. § 767.407(4). A guardian ad litem's statutorily defined duties are therefore similar to those of a public defender's. Thus, I conclude that when a guardian ad litem takes action as an advocate or attorney for the child, he or she does not act under color of state law for purposes of § 1983. *See also Nelson v. Kujawa*, No. 07-C-741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008).

Accordingly, to the extent Jasmer does not have absolute immunity from the plaintiffs' claim against her for her conduct prior to entry of the no-contact order, such claim must be dismissed because, in advocating for the child, Jasmer was not acting under color of state law.

Having dismissed the complaint, I must consider whether to grant Valadez leave to amend. *See, e.g., Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). And I conclude that granting such leave would be futile. I have dismissed the complaint not because of a pleading defect that could be cured, but because I may not exercise jurisdiction over the claims involving the no-contact order and because the separate claim against Jasmer based on her conduct prior to when the order was signed necessarily fails because Jasmer was not acting under color of state law. Accordingly, I will dismiss the complaint and direct entry of final judgment.

10

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's request to proceed without prepaying the filing fee (ECF No. 2) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motions to dismiss the complaint (ECF Nos. 8, 11 & 17) are **GRANTED IN PART**, as follows: The plaintiff's claims based on the signed no-contact order against Judge Aprahamian, Molly Jasmer, and the Waukesha County Circuit Court are dismissed without prejudice for lack of subject-matter jurisdiction. The plaintiff's claim against Jasmer for her conduct prior to when the no-contact order was signed is dismissed on the merits.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2021.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge